UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
ANGELA SHELTON, *on behalf of plaintiff and a class*,

                          Plaintiff,

       -against-

CIOX HEALTH, LLC,

                         Defendant.
------------------------------------------------------------ x

MEMORANDUM & OPINION

1:17-CV-00808 (ENV)(LB)

VITALIANO, D.J.

    Plaintiff Angela Shelton filed this action against CIOX Health, LLC ("CIOX"), on behalf of herself and a purported class of similarly situated plaintiffs, alleging that COIX charged in excess of the statutory permissible rate for copies of medical records, which, she claims, is in violation of New York Public Health Law § 18. Compl., ECF Dkt. No. 1. CIOX has moved to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mem. of Law in Support of its Mot. to Dismiss, ECF Dkt. No. 18-1. For the reasons that follow, the motion is granted.[1]

Background[2]

    CIOX contracts with numerous healthcare providers nationwide, including Queens Hospital Center ("QHC"), to service requests from patients for copies of their medical records.

---

[1]     Because the Court determines that the voluntary payment doctrine bars Shelton's claims, it does not reach COIX's alternative arguments that Shelton lacks a good faith basis to assert her claims and that she pleaded an impermissible class.

[2]     Background facts are drawn primarily from the complaint. They are deemed true for the purposes of this motion.

Compl. at 1-2.³ In October 2016, Shelton's attorney ordered copies of her 16-page medical record from QHC, in connection with a personal injury case. *Id.* at 2. Providing the requested copies, CIOX charged Shelton's attorney $1.50 per page, a base fee of $25 and $1.57 for shipping and handling, which totaled $50.57. *Id.* at 2; Compl., Ex. B. Although New York Public Health Law § 18 provides that a health care provider may only charge its actual costs in providing medical records, but, regardless the cost, the fee is capped at $.75 per page, Shelton's attorney paid the charge nonetheless because, she alleges, not paying the fee would have resulted in an otherwise undescribed inability to timely pursue her personal injury claim, presumably related in some way to the treatment referenced in the medical records. Compl. at 2.

Shelton seeks the following relief: (1) restitution based on CIOX's allegedly unjust enrichment and (2) damages based upon CIOX's allegedly deceptive acts and practices in billing above the statutory limit in violation of New York General Business Law ("GBL") § 349. *Id.* at 4-5.

## Standard of Review

An assessment of the worthiness of any cause of action begins with an analysis of the complaint. Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." A litigant need not, though, supply "detailed factual allegations" in support of her claims, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 167 L. Ed. 2d 929 (2007), but she must provide more "than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

---

³       CIOX is the successor-in-interest to IOD Incorporated – the company that provided Shelton with her medical records. Compl. at 1-2. For convenience, the Court will refer to any entity involved in responding to Shelton's request for or providing her with her records as CIOX.

Ct. 1937, 173 L. Ed. 2d 868 (2009). "A pleading that offers 'labels and conclusions' . . . will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b) dismissal motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotations omitted). On a Rule 12(b)(6) motion, the motion court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).

## Discussion

I.  New York's Voluntary Payment Doctrine

New York has enacted a regulatory regime for the provision of health care information to patients. Its Public Health Law § 18 states that "a health care provider shall provide an opportunity, within ten days, for [a patient] to inspect any patient information concerning or relating to the examination or treatment of such subject in the possession of such health care provider." N.Y. Pub. Health Law § 18(2)(a). The law further states that "[t]he provider may impose a reasonable charge for all inspections and copies, not exceeding the costs incurred by such provider, . . . [h]owever the reasonable charge for paper copies shall not exceed seventy-five cents per page." N.Y. Pub. Health Law § 18(2)(e).

Proof of a violation of § 18, however, does not necessarily mean that an overcharged

3

patient will prevail in a lawsuit. New York embraces the doctrine, "that a voluntary payment [of an improper charge] made with full knowledge of the facts cannot be recovered because it was made pursuant to a mistake of law." *Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*, 118 A.D.2d 532, 535 (2d Dep't 1986) (citing *Adrico Realty Corp. v. City of New York*, 164 N.E. 732, 250 N.Y. 29 (1928)); *see also Dillon v. U-A Columbia Cablevision of Westchester*, 292 A.D.2d 25, 27 (2d Dep't 2002); *Wurtz v. Rawlings Co.*, No. 12-CV-1182 (JMA) (AKT), 2016 WL 7174674, at *5 (E.D.N.Y. Nov. 17, 2016). The doctrine can bar both statutory claims under GBL § 349 and common law claims. *Wurtz*, 2016 WL 7174674, at *6-8. Applying the doctrine, New York courts reason that "[w]hen a party intends to resort to litigation in order to resist paying an unjust demand, that party should take its position at the time of the demand, and litigate the issue before, rather than after, payment is made." *Gimbel*, 118 A.D.3d at 535. Indeed, a party need only object to the unlawful bill before rendering payment to preserve a later claim. *See Ortiz v. Ciox Health LLC*, No. 17-cv-4039(DLC), 2018 WL 1033237, at *3-4 (S.D.N.Y. Feb. 22, 2018) (finding that the voluntary payment doctrine did not bar a claim against CIOX for the same § 18 overcharge alleged here when the plaintiff protested the charge by informing the hospital that it could not charge more than $.75 per page).

As *Ortiz*, for example, suggests, there are limiting exceptions to this doctrine. *See id.* It, obviously, does not apply to *involuntary* payments made as a result of duress or fraud. *Wurtz*, 2016 WL 7174674, at *5. To find that a payment was made under duress, the payment "must have been motivated by 'some actual or threatened exercise of power possessed' by defendants such that the plaintiff is forced to choose 'the lesser of two evils.'" *Id.* at *9 (quoting *People v. Dioguardi*, 168 N.E.2d 683, 693, 8 N.Y.2d 260, 276, 203 N.Y.S.2d 870, 884 (1960)).

Courts evaluate duress claims of involuntary payment with an eye to the factual context.

4

For example, in *Negrin*, the court determined that the plaintiff's GBL § 349 claim for violations of New York's Real Property Law could go forward even though a mortgage company defendant fully disclosed the allegedly improper closing fees. *Negrin v. Norwest Mortg., Inc.*, 263 A.D.2d 39, 50 (2d Dep't 1999). The court reasoned that when the plaintiff was at the mortgage company's "mercy" and the mortgage company "enjoy[ed] a disparity of bargaining power," "the only sane thing to do was to pay the charges rather than jeopardize the closing and the sale of her condominium." *Id.* (citation omitted).

Cut from the same cloth, the court in *Five Boro* found that the plaintiff-electricians' effectively involuntary payment had saved them from the voluntary payment doctrine and permitted recovery of license fees paid to the City of New York, without protest, which were subsequently held to be unconstitutional. *Five Boro Elec. Contractors Ass'n v. City of New York*, 187 N.E.2d 774, 774-75, 12 N.Y.2d 146, 147-48, 237 N.Y.S.2d 315, 315-16 (1962). The court held that the plaintiffs had paid the fees under duress when "their only alternative was to submit to an illegal exaction or discontinue their businesses." *Id.* at 776. In making its ruling, the court emphasized that "[u]ndue interference with the conduct of a business or occupation through an obstructive use of the licensing power has been held to constitute duress." *Id.* at 149-50. There are circumstances, then, when the law will excuse the payment on a demand that the payer makes without protest though she believes the demand to be wrongful.

On the other hand, when there is no perceived threat or uneven bargaining power, courts will not find that the plaintiff made a payment under duress. In *Video Aid Corp. v. Town of Wallkill*, the plaintiff paid a city fee in order to renovate its business property. 651 N.E.2d 886, 890, 85 N.Y.2d 663, 669, 628 N.Y.S.2d 18, 22 (1995). Although the fee was later found to be unconstitutional, the court held that the payment was not made under duress when there was "no

5

evidence of any threat, real or perceived, that the operation of plaintiffs' business would be impaired if they mounted a challenge to the . . . fees." *Id.* at 889. They failed to show "duress, meaning more than business or economic inconvenience." *Id.* at 890.

Medical records overage claims seem to have carved their own special niche in their confrontations with the voluntary payment doctrine.[4] For example, in *Carter v. CIOX Health, LLC*, the defendant charged the plaintiffs 75 cents per page plus a $2.00 delivery fee, which was in excess of their actual costs to copy the records and, therefore, in violation of § 18. 260 F. Supp. 3d 277, 289-90 (S.D.N.Y. 2017). The court held that the voluntary payment doctrine did not bar the plaintiffs' claims when the plaintiffs paid the defendants without full knowledge of defendant's actual costs. *Id.* at 289. The court noted that "when courts have refused to apply the voluntary payment doctrine in the context of excessive charges for medical records, they have done so precisely because the plaintiffs alleged that they did not know that the charge for the medical records exceeded the costs." *Id.* at 290 (citing *Ruzhinskaya v. HealthPort Techs., LLC*, No. 14-CV-2921, 2015 WL 7308662, at *4 (S.D.N.Y. Nov. 19, 2015)); *see also Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 275 (S.D.N.Y. 2014) ("That defendants disclosed in advance their intention to charge $0.75 per page, or that plaintiffs 'voluntarily agreed' to pay this figure, does not preclude a claim under Section 349(a), where defendants allegedly failed to disclose that their actual costs were below that figure."); *Ruzhinskaya v. Healthport Techs., LLC*,

---

[4]   New York courts have also considered the application of the voluntary payment doctrine in analogous fee limitation complaints. There has been litigation, for example, in cases alleging violations of CPLR 8001(c), which provides that charges for a subpoenaed record may not exceed 10 cents per page. CPLR § 8001(c). In *Morales v. Copy Right, Inc.*, it was alleged that defendants had charged more than 10 cents per page as set forth in the statute. 28 A.D.3d 440, 440 (2d Dep't 2006). Dismissal of plaintiffs' claims was found warranted when plaintiffs had paid the costs and had "not allege[d] that payment was made as a result of fraud, mistake of fact or law, or with protest." *Id.* at 441.

311 F.R.D. 87, 99 (S.D.N.Y. 2015) (finding that the voluntary payment doctrine did not bar plaintiff's claims against a company for charging at the statutory rate, but below the cost for copies of medical records when she "had no way to know at the time whether the charge exceeded HealthPort's 'costs incurred'").

Shelton seeks to follow the trail blazed by cases excusing voluntary payment and snuggle up to an exception to the bar the doctrine imposes. She argues that her attorney paid COIX's fee, which was well in excess of the statutory maximum, because she needed the records posthaste to pursue a personal injury claim (implying but not declaring that a statute of limitations might somehow be in issue). Compl. at 2. To the extent these cases excuse overcharge victims from the voluntary payment doctrine's bar because they were unaware that they were overcharged, due to the brassiness of the overcharged amount here, any such argument is unavailable to Shelton. Any hope of obtaining protection under the doctrine's lack of knowledge exception is extinguished, her knowledge or lack of knowledge as to the actual cost of coping her records, unlike the cases upon which she relies, is absolutely irrelevant since this overcharge exceeded the statutory cap notwithstanding the actual cost.[5]

The nature of her lament requires a laser focus, instead, on involuntariness. But, the proffered excuse for payment on the facts alleged by plaintiff does not present the type of perceived threat or uneven bargaining power identified in cases where courts have declined to apply the doctrine. First, Shelton fails to allege facts showing the harm that might have befallen

---

[5] Specifically, plaintiff cannot rely on cases in which defendants charged at or under § 18's statutory minimum but above the cost of reproduction. In those cases, the courts declined to apply the voluntary payment doctrine because the plaintiffs lacked full knowledge of the facts concerning the cost of reproduction at the time payment was made – not because the plaintiffs acted under duress. *See, e.g., Spiro*, 73 F. Supp. 3d at 275. In contrast here, Shelton was fully aware of the violation of the statutory cap of 75 cents per page.

7

her had she simply protested the fee demand to obtain copies of her medical records. Although Shelton asserts that not paying risked the "[]ability to timely pursue her injury claim," there is not even a hint of the existence of facts that could support that assertion. *See Video Aid Corp.*, 85 N.Y.2d at 669. Indeed, it is, experience would suggest, impossible to divine a situation in which the absence of medical records would prevent the timely filing of a personal injury claim. As a result, neither *Negrin*, where the plaintiffs were at a bargaining disadvantage and, in fact, found to be at the mercy of the mortgage company and would have risked failing to close on their home, *see Negrin*, 263 A.D.2d at 50 (2d Dep't 1999), nor *Five Boro*, where the plaintiffs risked the violation of the municipal regulation and the loss of their livelihood, *see Five Boro Elec. Contractors Ass'n*, 187 N.E. 2d at 774-76, is helpful to Shelton's case.

Worse yet, the record appears to show that COIX sent Shelton the medical records *prior to* any payment by her. More specifically, the complaint alleges that Shelton's attorney ordered copies of her medical records in October 2016. Compl. at 2. That is in harmony with the invoice COIX sent to Shelton, which is dated October 26, 2016, and is attached as an exhibit to the complaint. Compl., Ex. B. The payment due date on the invoice, however, was listed as November 5, 2016. *Id.* In other words, with the records in hand, there was no duress by reason of time or anything else forcing Shelton's payment. Shelton had her opportunity to protest by not paying the invoice when due. She, nonetheless, chose to pay rather than protest.

Moreover, even if COIX had demanded payment prior to shipment, and Shelton had paid the invoice before receiving the documents, she would still come up short of triggering the exception since she still could have protested with her payment. That is precisely what the plaintiffs in *Ortiz* had done. *See Ortiz*, 2018 WL 1033237, at *3-4. In other words, the record before the Court on this motion shows that Shelton could have protested the unlawful fee without

8

prejudicing her tort claims, but chose not to do so. That choice will not lift the bar of the voluntary payment doctrine.

II. <u>Fiduciary Duty</u>

In her final stab at evading the voluntary payment doctrine, plaintiff seems to invoke self-perceived fiduciary duties. In essence, she argues, first, that § 18 imposes a fiduciary duty on a medical practitioner to provide medical records to a patient and, second, that because the voluntary payment doctrine does not apply to cases seeking attorney's fees, due to the "fiduciary nature of the attorney-client relationship," the same principle should apply to the alleged fiduciary duty here. Pl.'s Resp. to Def.'s Mot. to Dismiss, at 7-8, ECF Dkt. No. 18-3 ("Pl.'s Mot.").

As a prefatory matter, Shelton's attempt to graft a fiduciary duty onto CIOX's provision of medical records fails. Although Shelton is correct that, in certain situations, doctors have fiduciary duties to their patients, as reflected in the cases she cites, these duties generally relate to confidentiality and care. *See* Pl.'s Mot. at 7. To the Court's knowledge, none of the cases addressing violations of § 18 have found or even discussed a health care provider's, let alone a third party contractor's, fiduciary duty to provide such records. *See, e.g., Ortiz*, 2018 WL 1033237; *Carter*, 260 F. Supp. 3d at 289-90; *Ruzhinskaya*, 311 F.R.D. at 99.[6] The inability to point to a single on point case, that is finding a fiduciary duty related to the copying of records,

---

[6] Shelton's fraught attempt to stretch fiduciary duties to cover § 18 by citing *Matter of Weg v. DeBuono* falls flat. 269 A.D.2d 683 (3rd Dep't 2000). In that case, the doctor-defendant appealed the Bureau of Professional Medical Conduct's charges of professional misconduct under, *inter alia*, Education Law § 6530(40) for failing to provide patient records in accordance with § 18. *Id.* at 684. The Appellate Division did not address the statutory purpose and reach of § 18 or whether it constituted a fiduciary duty, but simply found that *res judicata* did not apply to the professional misconduct charges. *Id.* at 687.

9

dooms this contention.

Casting a research net nationwide, Shelton offers a far-fetched analysis that assumes these records should be treated as New York courts treat claims for attorney's fees and then argues that New York courts would follow a handful of other decisions exempting attorney's fees cases from the voluntary payment doctrine. In fact, though the outcome was favorable to the payer, in a recent First Department case, the court appears to affirm that the voluntary payment doctrine continues to apply in suits for attorney's fees. In *Dubrow*, the court found that the voluntary payment doctrine did not bar plaintiff's claim, based on the attorney-defendants' failure to return a retainer, when the defendants failed to "established that plaintiff had full knowledge of the relevant facts, such as the number of hours spent by defendants in connection with their representation of him." *Dubrow v. Herman & Beinin*, 157 A.D.3d 620, 621 (1st Dep't 2018). Because the court analyzed the applicability of the doctrine rather than simply holding that it was inappropriate in such cases, the case closely implies that the voluntary payment doctrine *could* bar a plaintiff's claim for attorney's fees unless some other exception applies, as in *Dubrow*, the absence of knowledge. Provided that the voluntary payment doctrine is not *per se* impermissible in cases for attorney's fees in New York, the Court need not decide whether analogizing such cases to the provision of medical records is proper.

<u>Conclusion</u>

For the foregoing reasons, defendant's motion to dismiss is granted in its entirety.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
       July 16, 2018

<u>/s/ USDJ ERIC N. VITALIANO</u>
ERIC N. VITALIANO
United States District Judge
